18893. WHEELER *et al. v.* HOWARD *et al.*

ARGUED MARCH 15, 1955—DECIDED APRIL 11, 1955—
REHEARING DENIED MAY 11, 1955.

*Herbig, Rich & Smith, Carl A. Herbig,* for plaintiffs in error.
*Marvin G. Russell, Turner Paschal,* contra.

DUCKWORTH, Chief Justice. This case does not involve lands, money, or chattels, but it contributes in large measure to fixing the destiny of a human life while that life is in its infancy and therefore incapable of speaking or choosing for itself. A basic tenet of Christian civilization is the family, which is indispensable to its perpetuation. Be it ever so humble, there is no place as good as the family home for the rearing of children. Any decision here that fails to take full account of the foregoing everlasting truths would be wrong.

The law which we are asked to construe provides for strangers to a child to adopt it and thereupon become its adopted parents. But an indispensable prerequisite to such adoption is the written consent of its parents. Code (Ann. Supp.) § 74-403; Ga. L. 1941, p. 300. In view of what is said above, it should be obvious that, in thus requiring parental consent, the law is concerned only with the actual state of mind of the parents at the very instant the judgment of permanent adoption is decreed by the court, as provided for in Code (Ann. Supp.) § 74-414 (Ga. L. 1941, p. 305; 1949, p. 1157). Of course such consent must be shown before the interlocutory order granting temporary custody is entered as provided in Code (Ann. Supp.) § 74-413 (Ga. L. 1941, p. 304). Casting some small light on the concern of the law about the consent of parents is the provision for the report of the investigating agency (Code, Ann. Supp., § 74-411; Ga. L. 1941, p. 303), which must include the following: "Why the natural parent or parents, if living, desire to be relieved of the care, support, and guardianship of the child." If the signed written consent is all the law requires, then why the concern about the reason for giving it? If, as must be the intention of the law, this report discloses that the parents have no reason for consenting, the law

intends that the adoption be denied, then we can see no difference in whether this appears in the report or by signed pleadings of the parents praying that the court not allow the adoption.

The consent is unilateral, without consideration, and is for these reasons not a contract but a mere gratuituous offer, and its withdrawal without cause is not forbidden by the following decisions: *Janes* v. *Cleghorn,* 54 *Ga.* 9; *Bently* v. *Terry,* 59 *Ga.* 555 (27 Am. R. 399); *Durden* v. *Johnson,* 194 *Ga.* 689 (22 S. E. 2d 514); *Sessions* v. *Oliver,* 204 *Ga.* 425 (50 S. E. 2d 54)—all dealing with contracts. The decision in *Keheley* v. *Koonce,* 85 *Ga. App.* 893 (70 S. E. 2d 522), involved a mere consent and hence that decision is applicable here. It was there pointed out, and we think with sound logic, that, since those seeking to adopt may dismiss their proceeding at any time before final judgment, the parents, who are the other parties that are primarily concerned, may also withdraw their consent any time before final adoption.

While we can not consider matters not embraced in the question in reaching our conclusion, we do point to what this record shown as abundant proof of the wisdom of our decision that the consent may be arbitrarily withdrawn at any time before final judgment. It shows the infant to have been an illegitimate, but that, since the consent was signed, the parents have married, thus legitimatizing the child as provided in Code § 74-101.

The first question is answered in the affirmative. The second question requires no answer.

*Certified questions answered.   All the Justices concur.*